FILED
U.S.

15 OCT 02 PM 2:25

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

Matt Kenna
Kenna & Hickcox, P.C.
679 E. 2nd Ave., Suite 11 B
Durango, CO  81301
Phone: (970) 385-6941
*Pro Hac Vice*

Joro Walker USB #6676
Director, Utah Office
Land and Water Fund of the Rockies
1473 South 1100 East, Suite "F"
Salt Lake City, UT 84105
Phone: (801) 487-9911

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| LIVING RIVERS, INC., a non-profit, Utah corporation; | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 2:02CV0644TC |
| vs. | ) ) ) | MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (CORRECTED) |
| UNITED STATES BUREAU OF RECLAMATION, | ) ) ) | |
| Defendant. | ) ) ) | |

9

Plaintiff now submits this corrected memorandum in support of its motion for summary

judgment.  The original contained typographical errors that warranted correction.

## TABLE OF CONTENTS

INTRODUCTION........................................................................................................1

CONCISE STATEMENT OF MATERIAL FACTS...............................................................1

STANDARD OF REVIEW.............................................................................................2

ARGUMENT.............................................................................................................3

I.      THE BUREAU IMPROPERLY WITHHELD THE MAPS UNDER
        THE "HIGH 2" INTERPRETATION OF EXEMPTION 2........................................3

        A.      The Maps Do Not Fall Within the Statutory Language of Exemption 2.................4

        B.      Release of the Inundation Maps Would Not Risk "Circumvention of Law"...........5

II.     THIS COURT SHOULD NOT ACCEPT THE "HIGH 2"
        INTERPRETATION OF EXEMPTION 2.............................................................8

CONCLUSION..........................................................................................................11

**INTRODUCTION**

The United States Bureau of Reclamation ("the Bureau")[1] has violated the Freedom of Information Act ("FOIA"), by denying documents requested by plaintiff Living Rivers. The documents are "inundation maps" for Hoover and Glen Canyon Dams, release of which the Bureau has denied based on Exception 2 of FOIA, which allows federal agencies to exempt documents from disclosure that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Living Rivers has requested these maps to assess the human, social, environmental and economic costs resulting from potential dam failures at Hoover and Glen Canyon Dams, so that this analysis can be used by potentially affected communities and tribes in evaluating approaches to Colorado River management that could reduce or eliminate the risks associated with such failures. This action seeks an order declaring that the Bureau improperly denied the document requests, and enjoining the Bureau to provide the documents to Living Rivers.

**CONCISE STATEMENT OF MATERIAL FACTS**

1. On September 19, 2001, plaintiff Living Rivers sent a FOIA request to the Bureau requesting "a copy of all inundation maps, including those pertaining to dam failure, which have been prepared by the U.S. Bureau of Reclamation for the area below Hoover Dam." Exh. A That same day, Living Rivers sent a nearly identical letter to the Bureau, requesting the same information, but for Glen Canyon Dam. Exh. B.

---

[1]. The Bureau in its answer disputes that it is an "agency" under FOIA. Answer at 1; 2-3 ¶ 5. However, such an argument has no basis, as FOIA broadly defines "agency" to include "any executive department . . . or other establishment in the executive branch of the government . . . ." 5 U.S.C. § 552(f)(1). See Crooker v. Office of the Pardon Attorney, 614 F.2d 825, 827-28 (2nd Cir. 1980) (defendant found to be "agency" within parent agency Department of Justice).

2. On November 9, 2001, the Bureau denied Living Rivers' request pertaining to Hoover Dam, and on November 19, 2001, denied its request pertaining to Glen Canyon Dam. Exh.s C,D. Both denials relied upon Exemption 2 of FOIA, which provides that an agency may withhold documents "related solely to the internal personnel rules and practices of an agency" from disclosure. 5 U.S.C. § 552(b)(2). Id.

3. On December 10, 2001, Living Rivers sought reconsideration by the Bureau of these decisions by filing a single appeal, pursuant to FOIA's administrative appeal provision found at 5 U.S.C. § 552(a)(6)(A). Exh. E.  On April 2, 2002, the Bureau denied the appeal and affirmed its withholding of the requested documents, again based on Exemption 2. Exh. F.  The Service explained that "information in the maps could be used by potential terrorists to plan the means and manner of attacking the dam system to maximize the harm both to the system and to the surrounding communities." Id. at 2.[2]

4. The Bureau has "release[d] the inundation maps to city and county law enforcement offices . . . ." Id. at 2.

**STANDARD OF REVIEW**

FOIA gives jurisdiction to this Court to order the Bureau to produce the records requested by Living Rivers if the Court finds that the agency improperly withheld those records. 5 U.S.C. § 552(a)(4)(B).  FOIA mandates that a federal agency must provide any record in its possession to any person that requests it, unless a specific exemption under FOIA applies that would allow the agency to deny release of the document. 5 U.S.C. §§ 552(a)(3), 552(b).  The Court determines this matter

---

[2] . Because this exhibit consists of a letter with attachments, each with separate page numbering, plaintiffs created new pagination (lower-right corner) for ease of reference.

de novo. 5 U.S.C. § (a)(4)(B).   Further, the defendant has the burden of proof to show that it

properly employed a FOIA exemption to withhold agency records. Id.  Thus, unless the Bureau can

prove that it has properly applied Exemption 2 to deny the FOIA request, the Court should order the

agency to provide Living Rivers with the records it has requested.

**ARGUMENT**

The Bureau withholds the inundation maps at issue here on the basis of the "High 2"

interpretation of Exemption 2. Exh. F p.2.  The so-called "Low 2" exemption is the plain-language

interpretation of Exemption 2, which applies to documents relating to personnel matters such as

hiring standards and vacation time.  Id.  The so-called "High 2" exemption, upon which the Bureau

relies here, applies to internal documents, the disclosure of which would risk circumvention of law.

Id.  The High 2 exemption  has been applied by some courts outside this Circuit to allow agencies to

withhold documents such as law enforcement training manuals, although other circuits have rejected

the High 2 exemption.  However, it is plain that the High 2 interpretation of Exemption 2, even if

were to be accepted by this Court, does not apply to the inundation maps.  Further, even if it did

apply, this Court should not adopt the High 2 interpretation, which does not comport with the plain

language of Exemption 2.

**I.      THE BUREAU IMPROPERLY WITHHELD THE MAPS UNDER THE "HIGH 2"
INTERPRETATION OF EXEMPTION 2**

Application of the High 2 exemption consists of a two-part test.  "Under the 'high 2'

approach, adopted in four circuits, government information is exempted if:  (1) the information falls

within the language of the exemption-- that is, it relates to the 'internal personnel rules and practices'

of the agency and is 'predominantly internal';  and (2) its disclosure would risk circumvention of

3

federal statutes or regulations." Audubon Society v. U.S. Forest Service, 104 F.3d 1201, 1203-04

(10th Cir. 1997) (pet. for rehearing denied).  The inundation maps do not meet either test.

## A.    The Maps Do Not Fall Within the Statutory Language of Exemption 2

Exemption 2 only allows the withholding of documents "related solely to the internal

personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).  However, in no way can the maps

be deemed to relate to the Bureau's personnel rules and practices.

The Court of Appeals has already decided a case very much like this one, rejecting an

argument practically identical to that advanced here by the Bureau.  In Audubon Society, supra, the

Court rejected the U.S. Forest Service's withholding of maps showing the locations of Mexican

spotted owls, which are a "threatened" species under the Endangered Species Act ("ESA").  The

Forest Service had argued that if it released the maps showing locations of the owls (which plaintiffs

wished to use to assess the impact of logging upon owls), people with ulterior motives could find the

owls and capture or kill them, "risk[ing] circumvention of the Endangered Species Act." See id. at

1204.

The Court refused to even consider this explanation, as the Forest Service failed to meet the

threshold requirement that the species maps fit within the statutory language of Exemption 2:

> [W]e must initially determine whether the maps "fall within the terms of the statutory
> language. . ..  It stretches the language of the exemption too far to conclude that owl maps
> "relate" to personnel practices of the Forest Service.  The Forest Service's argument raises
> the concern expressed in Vaughn v. Rosen, 523 F.2d 1136 (D.C. Cir.1975):
>
> > In some attenuated sense, virtually everything that goes on in the Federal
> > Government, and much that goes on outside of it, could be said to be "related"
> > through some chain of circumstances to the "internal personnel rules and practices of
> > an agency."  The potentially all-encompassing sweep of a broad exemption of this
> > type [would] undercut[ ] the vitality of any such approach.

4

Id. at 1150 (Leventhal, J., concurring).  The Forest Service's argument would give the exemption an "all-encompassing sweep" that would cover virtually all material published by the Forest Service.

Audubon Society at 1204.  The same result must be found here.  The inundation maps simply do not relate to the "personnel rules and practices" of the Bureau, but rather concern its substantive dam-management duties.  To argue that the maps relate to "personnel" matters because Bureau personnel use them is plainly specious, and would give Exemption 2 an "all encompassing sweep" that is not permitted by FOIA.

The Bureau's explanation of why it denied the documents shows that the agency's decision can not stand.  The Bureau argues that the maps are "predominantly internal," but as the Court of Appeals has explained, it is not enough to show that a document is "internal." Rather, the document must relate to an internal personnel rule for the exemption to apply.  Compare Exh. F p.5 with Audubon Society at 1204 ("[T]he proper inquiry is not whether the owl maps relate to the 'agency practices,' but whether they relate to the 'personnel practices' of the Forest Service.").  However, the inundation maps simply do not relate to any personnel practice.

For these reasons, the inundation maps do not meet the language of Exemption 2, and so the High 2 interpretation does not apply.

**B.     Release of the Inundation Maps Would Not Risk "Circumvention of Law"**

Because the inundation maps do not meet the statutory language of Exemption 2, the Court need not consider the Bureau's argument for why releasing the maps would risk circumvention of law. Audubon Society, supra, at 1204 (Because "the maps are not sufficiently 'related to internal personnel rules and practices,' . . . we need not address the Forest Service's argument that disclosure

5

of the maps risks circumvention of the Endangered Species Act.").[3]

That said, the Court need not worry that a proper application of FOIA here might have a result that would foster terrorism and risk human life. Rather, if release of the inundation maps were truly a national security threat, FOIA of course would provide a means to keep them secret. The very first exemption of FOIA, Exemption 1, provides that an agency may withhold documents "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). However, the maps are not classified documents, and so the Bureau has not attempted to invoke this exemption. That the Bureau has "release[d] the inundation maps to city and county law enforcement offices," without any requirement of security clearances for officials in such offices (or shown any effort to keep them secure, or prohibited viewing by non-authorized persons such as office and janitorial staff), shows that the agency has not treated these documents as a matter of national security. See Exh. F p.2.

Further, even if the Bureau's "circumvention of law" argument were to be considered, it is hard to see how release of the maps would actually aid terrorists. All the inundation maps would show is which areas and communities would be flooded if the dams suffered catastrophic breach. Any terrorist would know that people would perish if the dams were destroyed, and knowledge of which specific areas would be flooded would not aid potential terrorists in accomplishing their goal. The

---

[3]. This was the result in Audubon Society, despite that there is "an explicit congressional decision to require agencies to afford first priority to the declared national policy of saving endangered species," and a "conscious decision by Congress to give endangered species priority over the 'primary missions' of federal agencies." TVA v. Hill, 437 U.S. 153, 194 (1978). If withheld documents do not fit the statutory language of Exemption 2, it simply is not relevant what the result of release might be, and the Court may not consider allegations of harm by the agency.

Bureau argues that the inundation maps are part of its Emergency Action Plan ("EAP"), which "sets forth the procedures that [the Bureau] is to follow in the event of an emergency at the [dams]," release of which "could be used by a perpetrator of violent action to learn how best to cause damage to the system and to the surrounding communities . . .." Exh. F pp.5-6. However, Living Rivers does not request the entire EAP, and FOIA plainly states that "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt . . .." 5 U.S.C. § 552(b) (final ¶). Living Rivers requests no dam schematics, operating procedures, or law enforcement instructions, and they need not be provided.

In fact, Living Rivers wants the maps specifically to <u>warn</u> potentially affected communities about the dangers of catastrophic breach, whether caused by a deliberate act or other cause. FOIA was passed by Congress on the premise that knowledge by the public is, on balance, a good thing. "Disclosure, not secrecy, is the dominate objective of the Act." <u>Dept. of Air Force v. Rose</u>, 425 U.S. 352, 361 (1976). "A central aim of the Freedom of Information Act has been to substitute legislative judgment for administrative discretion." <u>American Jewish Congress v. Kreps</u>, 574 F.2d 624, 628 n. 34 (D.C. Cir. 1978) (citations omitted). An agency may not withhold documents on the basis that it believes it knows which information is best for the public to have available, absent a specific application of a FOIA exemption. "FOIA is to be broadly construed in favor of disclosure, and its exemptions are to be narrowly construed." <u>Audubon Society</u> at 1203, citing <u>Anderson v. Department of Health & Human Services</u>, 907 F.2d 936, 941 (10th Cir.1990).

Further, in order to qualify for the "High 2" interpretation of Exemption 2, release of a document must not simply risk a violation of law, it must actually "hinder investigations [and] enable violators to avoid detection." <u>Dirksen v. United States Dept. of Health & Human Services</u>, 803 F.2d

7

1456, 1458 (9th Cir. 1986), citing Caplan v. Bureau of Alcohol, Tobacco & Firearms, 587 F.2d 544, 545 (2nd Cir. 1978).  The maps are unlike all the other cases in which the High 2 exemption has been found to apply: it is not an agency manual on how to screen for or detect violators of law, the release of which would hinder an investigation or help malfeasants avoid detection.  Hardy v. Bureau of Alcohol, Tobacco & Firearms, 631 F.2d 653, 656 (9th Cir. 1980); Dirksen, supra, at 1458.  Someone who wished to attack the dams might know with greater specificity what the results would be, but it would not help that person learn anything about enforcement methods or help her "avoid detection," let alone even aid in carrying out an actual act of sabotage.  See Maricopa Audubon Society v. Forest Service, 108 F.3d 1082, 1087 (9th Cir. 1997) (following Audubon Society and ordering release of maps showing locations of northern goshawks, finding that although the maps might help malfeasants break the law by harming goshawks, "[t]he requested information does not tell the Forest Service how to catch lawbreakers; nor does it tell lawbreakers how to avoid the Forest Service's enforcement efforts.").

For these reasons, the High 2 exemption does not apply.[4]

## II.   THIS COURT SHOULD NOT ACCEPT THE "HIGH 2" INTERPRETATION OF EXEMPTION 2

Lastly, even if the inundation maps were to meet the "High 2" interpretation of Exemption 2, this Court should reject the High 2 interpretation, just as several other courts have.

---

[4] .  Further, the Court has no equitable discretion to deny release of the documents. Congress has "repeated[ly] reject[ed] any interpretation of the FOIA which would allow an agency to withhold information on the basis of some vague 'public interest' standard."  Federal Open Market Comm. v. Merrill, 443 U.S. 340, 354 (1979), cited in Maricopa Audubon, supra, at 1087 ("We conclude that a district court lacks inherent power, equitable or otherwise, to exempt materials that FOIA itself does not exempt.").

The High 2 interpretation has been created or accepted by four of the Circuits (Second, Seventh, Ninth, and D.C.), and rejected by three others (Fifth, Sixth and Eighth). See Audubon Society at 1204 n. 1. The Tenth Circuit has not decided whether to accept it, and did not address the issue in Audubon Society because it did not need to, as the owl maps did not meet the exemption even if it were to be accepted. Id. at 1204 ("[E]ven if we were to adopt the high 2 analysis, the maps are not sufficiently 'related to internal personnel rules and practices.'"). Living Rivers urges this Court to follow the Fifth, Sixth, and Eighth Circuits, as well as the plain meaning of Exemption 2, and reject the "High 2" interpretation. Exemption 2 states that only matters that are "related solely to the internal personnel rules and practices of an agency" can be withheld, and this Court should not stretch, as some other courts have, the plain meaning of that exemption.

The Supreme Court has specifically left open the question of whether Exemption 2 encompasses the High 2 interpretation, and whether opinions relying on the House Report to justify the High 2 exemption are correct. Dept. of Air Force v. Rose, 425 U.S. 352, 364 (1976). However, the Court did state that the Senate Report reflects the true Congressional intent regarding Exemption 2, adopting the reasoning of Judge Wilkey in Vaughn v. Rosen, supra, at 1142. 425 U.S. at 365-67. Judge Wilkey authored the dissent in Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, (D.C. Cir. 1981) (en banc), a seminal case concerning the High 2 exemption.

In Crooker, the court found that if a document is predominantly internal, and the release of it would significantly risk circumvention of law, then it is exempt under Exemption 2. Id. at 1074 (holding law enforcement manual exempt from disclosure). Regardless of the majority opinion in Crooker, this Court should follow Judge Wilkey's dissent in that case, as well as the Fifth, Sixth and Eighth Circuits, and reject this interpretation of Exemption 2 that is not supported by its plain

9

meaning or any reliable legislative history.

The Eighth Circuit rejected the High 2 exemption in Cox v. United States Dept. of Justice, 576 F.2d 1302 (8th Cir. 1978). The Court, relying on the Senate Report for FOIA (S. Rep. No. 813, 89th Cong., 1st Sess. 8 (1965)), stated that Exemption 2 has a "narrow scope," and the much broader definition of Exemption 2 of the House Report (H. Rep. No. 1497, 89th Cong., 2d Sess. 10 (1966)) (used as the basis for the High 2 exemption) should not be followed, because the Supreme Court has recognized that the Senate Report accurately reflects Congressional intent of Exemption 2, not the House report. Id. at 1309-10, citing Rose, supra. Thus, according to the Eight Circuit, Exemption 2 "exempts only 'housekeeping' matters in which 'the public could not reasonably be expected to have an interest,'" such as parking facilities and lunch hours, which are true "personnel" ("Low 2") matters. 576 F.2d at 1309-10, citing Rose at 369; see also Vaughn v. Rosen, supra, at 1141.

The Fifth Circuit also has rejected the High 2 exemption. Stokes v. Brennan, 476 F.2d 699 (5th Cir. 1973). Like Cox, that court followed the Senate Report limiting Exemption 2 to trivial administrative matters, following the analysis of the legislative history by Professor Kenneth Davis contained in his Administrative Law Treatise, pp. 145, 174-75 (Supp. 1970). Id. at 702-03.

The Sixth Circuit has likewise rejected the High 2 exemption, in Hawkes v. Internal Revenue Service, 467 F.2d 787 (6th Cir. 1972). That court used the same reasoning as Cox and Stokes, namely that the plain language of Exemption 2 and the Senate Report should be followed. Id. at 796-97. The Court explained why the Senate Report should be followed. First, the bill originated in Senate, and although the House disagreed with the Senate on what Exemption 2 should cover, the House did not change its wording. Id. at 796. To allow the House meaning to be accorded to Exemption 2 "would be to allow a single house of the Congress to effectively alter the meaning

10

placed on proposed legislation by the other house without altering a word of text. We do not believe that this represents a wise approach to statutory interpretation." Id. at 797 (citations omitted). The second reason the Court followed the Senate's interpretation was that "the plain import of the (b)(2) language clearly favors the Senate's interpretation." Id. To interpret statutory language beyond its clear meaning, based on conflicted legislative history, is not proper. See Regan v. Wald, 468 U.S. 222, 237 (1984).

Further, Congress has crafted a narrow application of the High 2 interpretation into another exemption not applicable here, and the Court should not exceed Congressional authority by adopting a broader High 2 exemption. The 1986 FOIA amendments codified Crooker, as it applies to law enforcement manuals, into Exemption 7. See Kaganove v. EPA, 856 F.2d 884, 888-89 (7th Cir. 1988), cert. denied 488 U.S. 1011 (1989). Exemption 7(E) now exempts from disclosure

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of law.

5 U.S.C. § 552(b)(7)(E). Congress obviously liked the outcome of Crooker, which involved a training manual of the Bureau of Alcohol, Tobacco and Firearms concerning surveillance techniques, and codified it. However, Congress plainly did not agree with a broad "High 2" exemption that would apply outside the context of law enforcement manuals, and one should not be adopted by this Court.

**CONCLUSION**

For these reasons, the Court should declare that the Bureau improperly withheld the inundation maps, and order the Bureau to release them to Living Rivers.

11

RESPECTFULLY SUBMITTED October 9, 2002.

Matt Kenna
Kenna & Hickcox, P.C.
679 E. 2nd Ave., Suite 11 B
Durango, CO  81301
Phone: (970) 385-6941
Fax:    (970) 385-6804
*Pro Hac Vice*

Joro Walker USB #6676
Director, Utah Office
Land and Water Fund of the Rockies
1473 South 1100 East, Suite "F"
Salt Lake City, UT 84105
Phone: (801) 487-9911
Fax:    (801) 486-4233

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on October 9, 2002, I mailed a copy of this document to the following counsel of record by First-Class, U.S. Mail:

Elizabeth J. Shapiro
Marcia Berman
Robert D. McCallum, Jr.
U.S. Dept. of Justice, Civil Division
901 E St., NW, Room 1043
Washington, D.C.  20530

Paul M. Warner
Carlie Christensen
U.S. Attorney's Office
185 S. State St, #400
Salt Lake City, UT 84111-1538

Matt Kenna

12

# Exhibits/ Attachments to this document have **not** been scanned.

# Please see the case file.